The District Court erred by placing a thumb on the scale in favor of remand and by requiring J.B. Hunt to prove the allegations of plaintiff's complaint in order to support removal. In the complaint, the plaintiff alleged J.B. Hunt failed to pay drivers for rest breaks and non-driving time, quote, each and every day. And based on those allegations and information provided by J.B. Hunt's manager of human resources, the District Court should have found that J.B. Hunt met its burden of proof that plaintiff was seeking at least $5 million under CAFA. The complaint doesn't say, it says drivers each and every day. Does it say every driver? It says plaintiff and class members, plural, each and every day. Right. Yeah. Well, but I guess, and this probably doesn't go to any dispositive issue in the case. What are you supposed to do in a case where it seems as a matter of common sense, not every single driver was denied the statutory rights, but some number of them were? How is that mountain controversy supposed to be estimated? Well, I think the courts, this court in particular, has told the District Court to look at the allegations in the complaint first. Well, that's why I was asking, because I'm not sure I read the allegations as saying every day, every driver employed by J.B. Hunt was denied the rest and meal breaks. Am I wrong? I think there's a reasonable interpretation of the complaint, which is the only burden that's on us, that... That it means every single driver. Each and every day means each and every day. Well, no, each and every day, I understand. Every day, you violated the law. I guess I'm trying to figure out whether it means each and every driver, each and every day. I think it does, Your Honor, because fundamentally, their basic allegation in this case is that all of the drivers are paid under the same piece rate per mile system. And the complaint alleges in paragraphs 26 and 27 that that system is incapable of paying... Of accommodating... For non-driving work, including rest breaks, but also the litany of other non-driving tasks that are in the complaint. That's the predicate for the wage statement claim. And I understand these like malpractice cases, cases within the case. Everybody ends up arguing the opposite of their position. When this case finally gets to the merits, you're, of course, going to be arguing that nobody was damaged at all. And the other side's going to be arguing that there was enormous amounts of damage to lots of people. But I understand that at this point in the case, you're assuming the allegations of the complaint to be true. That's correct. Could the district court simply reject the defendant's assumptions about the damages as unreasonable in their face and then just remand? I think, I don't know how to pronounce it, the Roadrunner Transportation Service's case includes a statement to that effect. Correct. I don't think the district court can just reject the allegations, our reliance on the allegations in the complaint. And I think this court has said that in Arias, this court has said that in La Crosse, that a defendant, when looking at an indeterminate complaint, can rely upon a chain of reasoning that includes reasonable assumptions. And in those two cases, and in Waregi, that reasonable assumption can be based only on the allegations of the complaint. The district court here relied on Ibarra, a pattern of practice case, and the district court is correct in that case. A pattern of practice is not the same as alleging each and every day. But when they said each and every day, I thought that could be read to say, you're required to pay for these breaks each and every day, but occasionally did not do so. Not each and every day you didn't pay us, but that you rather each and every day modified how frequently this was supposed to occur. I think that I read the complaint as the plaintiff alleging that, in paragraph 30, defendants also failed to compensate plaintiffs and class members each and every day at least minimum wage for their lawfully required rest breaks. I think a reasonable interpretation of that is that they took unpaid rest breaks every day. And that's a test at this stage, whether or not your interpretation is reasonable. That's exactly right. It doesn't matter that there might be other reasonable interpretations of it, but especially in a case like this where the other side didn't present any proof, right, at this, I'll call it the jurisdictional stage. That's exactly right, and that's why in this case it was error for the district court not to allow JBN to rely on that reasonable assumption, had the plaintiff introduced evidence to attack that underlying assumption. I'm only thinking of the drivers on the New York, on the San Diego to LA route. Those are the only ones I'm really complaining about. There's only 30 of them, therefore the number is less. They could have done that. They could have introduced evidence to show from their perspective that there weren't unpaid rest breaks every day. That doesn't fix the problem with the wage statement claim. That independently has value of over five million in the allegation that the piece rate pay is incapable of paying non-driving tests. There's no question drivers are doing more than driving every each and every day. They allege that in the complaint. That is a common sense thing to believe. It's a reasonable interpretation, and even one non-driving test per pay period results in a violation of section 226 under their theory. In paragraph 770, excuse me, they allege that the wage statements violated section 226 of the California Labor Code because it didn't list all the wages they had earned. That, in paragraph 41, they say that allegations derivative of their unpaid wage claims. One of those being that based upon the per mile rate that JBL allegedly pays, none of their non-driving work was paid each and every day. So that claim in and of itself is more than five million dollars as demonstrated with Mr. Lemon's declaration. Yeah, I was going to ask you about that. That's a claim that I guess the inaccurate wage statement claim you claim is eight and a half million or so. Was there any discussion of that at all? Very limited. I think in the district court's opinion, it started with the arrest break and had like an additional citation that basically said the defendant relied upon only upon the plaintiff's allegations in the complaint and no evidence with respect to the wage statement claim too. But other than that, I don't think the district court really evaluated that claim independently. So I think both claims are sufficient to prove the amount of controversy. Our burden here is not great. We're not required to prove the case, the plaintiff's case. Lewis started with that in 2010. We don't have to prove liability to get into federal court. Green and Waragi versus Roadrunner, at least that's my interpretation of how you say that case's name, say our burden is to prove that it's possible that they could recover more than five million in this case. And I think we've met that burden here. Indeed in Ibarra, the Ninth Circuit, this court said the reason it was remanding that case to give the defendant the opportunity to prove that its assumptions were founded on reasonable assumptions was because the complaint there did not allege universally each and every shift that violated the labor laws. I think we've established that the complaint here does allege. Well that leads to, you've sort of anticipated my next question. What do you want us to do? In other words, do you want us to tell the district court it aired and there is federal jurisdiction under CAFA or do you want us to send it back for the district court to do a better job of explaining what it did? The former. We want this court, we would respectfully ask this court to reverse and with instructions that the district court should exercise jurisdiction here. I haven't mentioned the anti-removal presumption. I mean that's error in and of itself. I think that's set up in dark Cherokee in this court several times. So that independently is sufficient to reverse. But I think even without that language in the district court's order, had the district court done the exact same analysis, we'd still be entitled to reversal. I think we met our burden of proof on the amount of controversy. The plaintiff doesn't object to any of the underlying evidence. Well the reason I ask is this. The court did this sua sponte as I recall, right? Correct. And then the other side filed a motion to remand and the court said, well I'm not going to take it up because it's moot. Correct. Have they ever had a fair chance to argue their case? In other words, any good or not. But the court never addressed it. The court didn't reach the timeliness argument. I think the record's complete enough for this court. But that's all that came in the motion. Their motion to remand was a timeliness motion. It was timeliness. I think they parroted the show cause order. I think they did make a similar amount of controversy challenge. So on that, I don't think that issue's left. It should be left to be open on remand. They were entitled to file. They did file a motion to remand below setting up that argument. They had the opportunity here under De Novo to explain based upon the record why we didn't meet our burden of proof. Did the district court address the timeliness issue? It did not. It denied their motion to remand as moot. So I don't think. Which would imply it didn't reach the merit, right? That's correct. And of course, they didn't raise that issue here before this court, which they could as an alternative ground for affirmance. But that issue hasn't been addressed by the district court. So I think at a minimum, we've asked this court to reverse and remand with instructions or at least a conclusion that J.B. Hunt met its burden of proof on the amount of controversy. And if they want to raise the timeliness issue on remand, we can address it there. We think we timely removed this case under the court's precedence. But at a minimum, I don't think well, jurisdiction is always an issue that a party could raise. So whatever we do wouldn't preclude them from arguing there was no jurisdiction, I guess. I could reserve. Yes, you're at about four minutes if you'd like to reserve that time. Thank you. And Mr. Morrow. Good afternoon, Your Honors. May it please the court. Well, we do understand that part of the order of the district court did provide some older case law inconsistent with the Dark Cherokee and the Roadrunner case. We believe that the court did consider correctly the preponderance of the evidence standard, which is consider the question of the preponderance of the evidence when only one side only presented any evidence. I mean, you made no factual presentation on the OIC. So the only evidence that was before the court was the defendant. So how do you weigh a preponderance of the evidence in that situation? That term, preponderance, by definition assumes both parties have reduced evidence and you haven't done that. So don't you think that itself was an error to depend on the preponderance of the evidence standard? I do not, Your Honor. The evidence before the court, the court weighed it, notwithstanding any other additional evidence and came to the conclusion that it did. Now, I do understand that. Weighed it in what fashion? Well, the sufficiency of that particular evidence that is submitted. Assuming, I mean, put aside the fact that you didn't put in any evidence. Tell me why under the standards that the district court was supposed to apply, this complaint doesn't put in controversy the relevant amount. And I understand you're now in a strange position of saying the district court thinks I have, you know, the other side thinks we have a $22 million case and we think we don't, which is a position no one will hold you to later on in the litigation if you have to try it. But tell me why the district court properly evaluated this. It looks to me like on the face of the information they provided, there's more than $5 million at issue in each claim. And the district court said there was zero. How can that be? Your Honor, I think it did weigh the evidence that was submitted. Well, I noticed it may have weighed it, but it doesn't seem to have given any weight to it. There's a bunch of evidence here. And he said, nope, no, there isn't. And there's no evidence on your side. And he says, yes, there's a lot. And so I'm trying to figure out how, why the district court was correct in doing that. Well, Your Honor, based on the standard, how do I, I would agree that, or what I would request is that this case be remanded with instruction for the court to issue an order consistent with how do I versus Roadrunner Transportation. There is a different standard that the court has, the district court has stated in its order, although later on in the order of Exhibit Record Volume 1, uh, Exhibit Record 5, it does go on to state that without supporting, sorry, it says defendant fails to show by preponderance of evidence that the aggregate amount of controversy has seized 5 million. Well, but they believe, I mean, to be accurate, they believe they don't owe you a penny. That's not, that's not the issue. Every defendant thinks he doesn't owe you a penny. What he, what they're dealing with is the allegations of your complaint. And if accepted, and if, if your legal arguments are correct, what their exposure is. So tell me what evidence you would put in if we remanded for an evidentiary hearing. How would you prove to the judge that you're really not seeking $5 million? Well, Your Honor, we'll probably start with a deposition of Mr. Lenner, who was the HR representative submitting evidence that, uh, the three and a half hour shifts is accurate. And then, um, I'd probably start with whether they actually permitted an authorized arrest period in the first instance. No, that, that goes to damage. I understand why you have plenty of evidence, at least it seems to me. We're not at summary judgment stage. You've got evidence to suggest that they're liable. My question is, how would you prove that their potential liability was not at least $5 million? Not much in your interest to prove that, but since you want to argue the jurisdictional issue, how would you prove that? Uh, Your Honor, I mean, it would, it would, uh. You don't, you really don't want to prove that, do you? Well, I mean, yeah, I mean, you know, I would agree with that, Your Honor. Um, you know, this is, uh, an uphill, uh. Yeah, look, it's hard, hard to blame you. The district judge did this sua sponte, so you're not to blame for it, and you're here defending a district judge. Uh, but it does seem to me you've got a tough road to, in a transportation case, that's not a pun, but you've got a tough road to here. But what, what is troubling me is what do we do? Um, if we were to agree, uh, with the defendant's appellants that the district judge did not apply the correct standards to determine the amount of controversy, they're suggesting we remand with instructions to find that they have satisfied that. Uh, alternatively, it seems our case law requires that we remand, uh, and allow the district judge to do the proper analysis. That, that would be, uh, the latter, um, would be our, uh. And that's why I ask, why do you think a proper analysis in this case would come up with less than $5 million? Whether or not you would present evidence or just logical argument, give me some basis for concluding that if you are entirely successful in this matter, the maximum recovery that you could possibly get is less than $5 million. Well, well, I think your honor, uh, at least some of it, some of the language that, uh, the appellant has relied upon is, is subject to, um, interpretation, uh, just as this court. Yeah, but your interpretation of it, your interpretation of it, I assume is quite broad. In other words, you're, you're arguing that they're, they're liable to the maximum amount of the logic of my arguments. I mean, you should be arguing that you represent the, you know, a class of plaintiffs. So just tell me how, how would you would show to the, show the judge that it's not really probable or possible that you could recover more than $5 million in this matter? I don't have a response to that, uh, your honor. And the judge put you in that position. You didn't put yourself in that position. So I understand. I mean, we understand that the court applied a, a different standard, um, an erroneous standard. And, uh, we would request, uh, uh, this court, um, submit it or remand with instructions, um, consistent with, uh, jargon versus roadrunner transportation. So in other words, we would not make that determination you're suggesting we remanded to the district court and tell the court to follow our case law? That would be correct, your honor. Yeah. And let me just spend one more second on that. And I'm thinking from the perspective of somebody who used to be a plaintiff's lawyer occasionally, uh, it seems to me almost certain that if we remand and the district court doesn't find federal jurisdiction based on what we know now, you'll be back up here arguing the same issue over again. Wouldn't you rather that we just settle the issue? Your honor, I think the trier facts should, should determine that. I understand that there's a de novo, uh, standard here, um, but that would be our preference. How would this report make that determination? And if there are no further questions, your honors, and I submit. Thank you. And Mr. Eckert, you had four minutes for rebuttal. I only have a couple of points, your honor. I think in terms of the relief provided by this court, the Roadrunner case itself started by saying the district court applied the wrong standard. It is the exact same standard our district court applied here. But then it went on to analyze the district court's actual analysis of the amount of controversy. And it remanded with instructions to exercise jurisdiction. It didn't say the district court applied the wrong standard, we're going to send it back to the district court to apply the correct one. It answered the question to get the case going. And that's, that's what we want. With all due respect to the district court, we asked, we responded to the show cause order and noted, hey, the standard's different than what your show cause order says. There isn't an anti-removal presumption anymore. And yet we still got an order that had that standard in there. So we'd rather not go back to the district court for another round of briefing on the amount of controversy, we'd like to do, ask you to do what this court did in Roadrunner. Tell the district court it applied the wrong standard, go on to review the evidence and the allegations in the complaint, and find that the amount of controversy is met. Now, one other point. Once the complaint makes an allegation about the violation rate, the defendant's entitled to rely upon that allegation, regardless of what evidence the plaintiff puts in it. The question is, does the complaint make it possible that the plaintiff could recover more than $5 million? And the fact that they wrote the complaint the way they did, as this court said in green, plaintiff, you wrote the complaint, you're stuck with it. And if it lands you in federal court, that's the result. Being in federal court's not in trouble. I agree. But we want to be in federal court. And so those were the two points I had on the bill. I have more time. If the court doesn't have any additional questions, I'll submit. Thank you. Thank you both for your arguments this afternoon. They were very helpful. And we are adjourned.
judges: TASHIMA, HURWITZ, BADE